EXHIBIT 5



August 7, 2024

U.S. Immigration and Customs Enforcement
1250 Poydras Street
New Orleans, LA 70113

**REQUEST FOR RELEASE OF ERMINE NERSISIAN
ALIEN REGISTRATION NUMBER: 249-375-719**

**DISABLED WOMAN DETAINED AT THE SOUTH LOUISIANA ICE PROCESSING CENTER**

Re: Ermine Nersisian
Alien Registration Number: 249 375 719

Dear U.S. Immigration and Customs Enforcement:

Robert F. Kennedy Human Rights ("RFK Human Rights") submits this request for release on behalf of Ermine Nersisian ("Ermine"). A G28 is attached. RFK Human Rights previously submitted a request for release on behalf of Ermine on July 25, 2024, and denied on July 29, 2024 ("July 29, 2024 Parole Denial"). Therefore, RFK Human Rights is once again submitting a request for release that includes additional information to support a finding that Ermine is neither a flight risk nor a danger to the community. Rather, Ermine is a medically disabled woman who has family in the United States who are United States Citizens (USC) and can provide her with a home, financial support and obtain the necessary and critical care that she requires to treat her medical condition.

As is set forth in the July 25, 2024, parole request, if released from detention Ermine will go to live with her sister, Vardui Nersesyan and brother-in-law, Hamlet Grigoryan who own their own home and will be able to provide for her medical needs. *See* Exh 1, Letter from Vardui Nersesyan, dated August 7, 2024 ("Vardui Letter"). The release request that was submitted by RFK Human Rights on July 25, 2024, that was denied by ICE on July 29, 2024 ("July 25, 2024, Parole Request") contained a letter from Hamlet Grigoryan together with proof of income and proof of address. For ease of the July 25, 2024, Parole Request is attached hereto as Exh. 3.

The July 29, 2024, parole denial did not provide any explanation as to why ERO/ICE does not believe that the imposition of additional conditions of release would ensure against any flight risk concerns that ICE has and did not set forth that Ermine's brother-in-law and sister did not meet the income requirements that ICE may have for sponsors. While RFK Human Rights does not know whether ICE denied the parole request on the basis that Ermine's sister and brother-in-law do not make enough money, we now submit additional evidence that Ermine will be financially provided for by her family. Specifically, Khachik Arsenovich Grigoryan, the brother of Ermine's brother-in-law, is also submitting a letter and his information to demonstrate that the family is able



to provide financially for Ermine. *See* Exh. 2, Letter dated August 8, 2024, from Khachik Arsenovich Grigoryan ("Khachik Letter") together with 2023 Income Tax Returns, USA Passport Face Page, California Driver's License and proof of residence/address in the form of utility bills. As is reflect by the 2023 Income Tax Returns, Khachik Arsenovich Grigoryan and his wife, have sufficient income to provide any additional economic support for Ermine. As is also set forth in the Khachik Letter, he will also ensure that Ermine goes to all appointments with the immigration court and with ICE. This is a close-knit family and therefore they collectively will be able to provide the income support, emotional support, medical care and support for Ermine to make all appointments with ICE and with the immigration court.

RFK Human Rights has documented in emails to ICE that Ermine is suffering in detention. She has cried during every legal call that RFK Human Rights has had with her, and she has not received the necessary and critical medical care and accommodations for her disability that she requires. Ermine's arms and legs are largely immobile, and she is in excruciating pain. She has extreme numbness in her fingers and is losing feeling in her fingers. She also has not been able to take regular showers because it is not possible for her to take a shower without assistance, and she is understandably shy and uncomfortable with being naked in front of other women. She also has not been able to physically use a razor to shave her legs and under arms and feels a great deal of shame because she is not able to maintain her hygiene. She also needs women to provide sufficient physical support when she is in the shower, so she does not fall. Ermine has also been unable to eat because she is extremely depressed. Finally, Ermine has not been able to sleep-she is in extreme pain, depressed, anxious and has developed a hernia and extreme pain in her neck and does not have anything to alleviate the pain. Ermine is distraught on a daily basis, in pain and during legal calls that RFK Human Rights has had with her she cries the entire time.

The federal definition of what constitutes a disability is broad. 42 U.S. C. § 12102(4)(A). A disability is defined as a "a physical or mental impairment that substantially limits one or more life activities" and includes an individual with a record of or who is regarded as having such an impairment. 42 U.S.C. § 12102(1). Physical or mental impairments include mental illness. 6 C.F.R. 15.3(d). Section 504 of the Rehabilitation Act ("Section 504") prohibits discrimination based on disability in programs or activities conducted by executive agencies of the United States. 29 U.S.C. § 794. Individuals are entitled to accommodation under Section 504 if they have a disability-a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). This is a reasonable and necessary accommodation and is neither a "fundamental alteration" nor an "undue financial or administrative burden." *Alexander v. Choate*, 469 U.S. 287, 299-300, 302 n.21 (1985). A fundamental alteration is one that changes an "essential aspect" of the program. *Cf PGA Tour, Inc. v. Martin*, 532 U.S. 661-663 (2001) (discussing the distinction between a fundamental alteration and peripheral features of a program for a disabled golfer requesting the use of a golf cart). Release of Ermine as a disabled woman given the evidence that she can has USC family in the United States who can provide a home, economic support, access to medical care and ensure that she complies with all ICE appointments and immigration court dates is a reasonable accommodation.



Ermine has every reason to comply with all Court and immigration dates because she came to the United States for safety and to apply for asylum. Ermine is also not a danger to the community. Ermine's detention is for the purposes of immigration. There is therefore no basis to conclude that she is a danger to the community.

Respectfully submitted,

*/s/ Sarah T. Gillman*
Sarah T. Gillman
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine Street, 8th Floor, Suite 801
New York, NY 10005
Tel.: (646) 289-5593
gillman@rfkhumanrights.org