## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **Ermine Nersisian,** | Case No. 24-2519 |
| *Plaintiff*, | |
| v. | |
| **Mellissa B. Harper**, in her Official Capacity as Field Office Director New Orleans ICE Field Office; **Scott Ladwig**, in his Official Capacity as Deputy Field Office Director, New Orleans ICE Field Office; **Patrick J. Lechleitner** in his official capacity as Deputy Director and Senior Official Performing the Duties of the Director for U.S. Immigration and Customs Enforcement; **Alejandro Mayorkas**, in his official capacity as Secretary, U.S. Department of Homeland Security; **U.S. Department of Homeland Security**; and **U.S. Immigration and Customs Enforcement**, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Defendants*. | |

## INTRODUCTION

1.      This case is about Ermine Nersisian ("Ermine" or "Plaintiff"), a fifty-one (51)-year old asylum seeker who fled persecution in Russia. Ermine "suffers from severe, debilitating bilateral osteoarthritis and meniscal injury as well as severe anxiety and depression, both of which are being exacerbated by conditions related to her ongoing detention" and is currently detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE")

- 1 -

("government") at the South Louisiana ICE Processing Center ("Basile") in Basile, Louisiana. *See* Ex. 1, Letter from Dr. Joseph Shin, M.D. and curriculum vitae ("Shin Letter").[1]

2.      After presenting herself through the CBP One process at the U.S.-Mexico border with her daughter, son-in-law, and young grandson, Ermine was separated from her family and taken into custody. On May 21, 2024, she passed her credible fear interview ("CFI"). Despite the fact that she should have—if given an individualized review—been released under a binding policy that applies to asylum seekers like her, Ermine has been detained by the government for over five months.

3.      Further, though Defendants have been on notice of Ermine's disability, which has directly prevented her from presenting her full case for asylum before the Executive Office for Immigration Review ("EOIR"), they have refused to release her. After weeks of emails from Ermine's counsel documenting her decline, on October 1, 2024, Defendants were served with an expert medical opinion that states in clear terms that Ermine's mobility and mental health will worsen and have potentially irreversible consequences the longer she remains detained, urging that she should be released. *See* Ex. 1, Shin Letter, and Ex. 2, Email communications with Defendants from July 19, 2024-October 17, 2024 ("Emails to Defendants from July 19, 2024-October 17, 2024").

4.      From July 19, 2024, to the date of this filing, Defendants have been on notice of Ermine's disability and its debilitating and dangerous impact on her physical and mental health.

---

[1] Dr. Shin is board-certified in Internal Medicine, a graduate of NYU School of Medicine, and currently serves as an Assistant Professor of Medicine at Weill Cornell Medicine and the Cornell Center for Health Equity, and an attending physician at NY Presbyterian Hospital on the Inpatient Medicine units as well as the Medicine-Orthopedics-Trauma Service.

Ermine's counsel has provided Defendants with consistent, detailed accounts of her daily excruciating pain, acute mental distress, and deteriorating physical condition, including the loss of her ability to walk. *See* Ex. 2, Emails to Defendants from July 19, 2024-October 17, 2024.

5.      These emails also set forth that due to her physical and mental health disabilities, Ermine is unable to concentrate or recall dates, preventing her full participation in her EOIR asylum proceedings.  These emails reflect counsel's firsthand, contemporaneous observations of Ermine's physical and mental state, made over numerous legal video calls during her ongoing detention by Defendants.

6.      Despite the weight of the evidence underscoring how Ermine presents a strong candidate for parole, Defendants have denied all requests with nothing more than a cursory conclusion that Ermine—who can barely walk—is a flight risk.

7.      Defendants' refusal to release Ermine is not only cruel; it is also unlawful.

8.      First, Ermine's continued incarceration violates Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. Ermine is an individual with several disabilities, *See* Ex. 1, Shin Letter, protected by the anti-discrimination requirements of Section 504 and her ongoing confinement constitutes disability discrimination. As is discussed *infra,* Ermine cannot meaningfully participate in her removal proceedings as a result of her untreated and daily deteriorating physical and mental health disabilities in civil immigration detention in the custody of Defendants. The accommodation of release is, as is discussed *infra,* both reasonable and not a fundamental alteration of a government program.

9.      Second, Defendants' refusal to release Ermine is a violation of the Administrative Procedure Act ("APA") and *United States ex rel. Accardi v. Shaugnessy*, 347 U.S. 260, 266-268 (1954).  Defendants have violated their own Parole Directive, discussed *infra*, by failing to provide

- 3 -

Ermine, a bona fide asylum seeker who passed her CFI yet is subject to long-term civil immigration detention, with an individualized determination or presumption of release.  Rather, Defendants have issued four identical, cursory denials that do not include any individualized determination. Defendants' failure to conduct an individualized review of Ermine's case is arbitrary and capricious, and contrary to law under the APA.

10.     Third, under the Immigration and Nationality Act ("INA") and implementing regulations, immigration detention of Ermine—an asylum seeker who passed her CFI—must be based on an individualized determination that the Plaintiff constitutes a flight risk or a danger to the community.  Detention based on non-individualized determination violates the INA and its implementing regulations. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. 212.5(b); *see also* 8 C.F.R. § 235.3(c).

11.     Lastly, Defendants' failure to provide an individualized determination of flight risk and danger to Ermine violates her rights under the Due Process Clause of the Fifth Amendment of the United States Constitution. Asylum seekers like Ermine have a right to access a meaningful parole process.

12.     Without this Court's intervention, Ermine will remain unlawfully detained by Defendants, in debilitating pain and at imminent risk of irreversible medical consequences.

## PARTIES

13.     Plaintiff Ermine Nersisian is a disabled woman who came to the United States to seek safety from the persecution and torture that she suffered in Russia. Alongside her daughter, son-in-law, and their young child (her grandchild), they followed the CBP One process at the U.S.-Mexico border to apply for asylum. Ermine was then cruelly and unnecessarily separated from her family and taken into custody by Defendants. Ermine passed her CFI and has a pending

immigration proceedings before EOIR.  She is currently detained at Basile and has remained in Defendants' custody since May 4, 2024.

14.     Defendant Mellissa B. Harper is the New Orleans ICE Field Office Director and is responsible for ICE policies and operations in the New Orleans District, which stretches across Alabama, Arkansas, Louisiana, Mississippi, and Tennessee. Ermine is currently detained by ICE within this area of responsibility. Along with the other named Defendants, Defendant Harper is responsible for determinations concerning Ermine and subsequent ICE decisions to detain and pursue removal of Ermine.  She is named in her official capacity.

15.     Defendant Scott Ladwig is the New Orleans ICE Deputy Field Office Director and, upon information and belief, is responsible for ICE policies and operations in the New Orleans ICE Field Office's Area of Responsibility, which stretches across Alabama, Arkansas, Louisiana, Mississippi, and Tennessee. Upon information and belief, Defendant Ladwig is supervised by Defendant Mellissa Harper. Along with the other named Defendants, Defendant Ladwig is responsible for ICE's determinations concerning Ermine and subsequent ICE decisions to detain and pursue removal of Ermine. He is named in his official capacity.

16.     Defendant Patrick J. Lechleitner is named in his official capacity as the Deputy Director and Senior Official Performing the Duties of the Director for ICE. In this capacity, he is responsible for overseeing ICE's day-to-day operations, leading approximately 20,000 ICE employees, including Defendants Harper and Ladwig. Along with the other named Defendants, Defendant Lechleitner is responsible for ICE's determinations regarding Ermine and consequent ICE decisions to detain Ermine.

17.     Defendant Alejandro Mayorkas is named in his official capacity as Secretary of DHS. In this capacity, he is responsible for the administration of the immigration laws; he

supervises the other named Defendants; and, along with the other named Defendants, he is responsible for ICE's determinations regarding Ermine and consequent ICE decisions to detain and pursue removal of Ermine.

18.     Defendant DHS is an executive department of the United States Government headquartered in Washington, D.C. DHS is the parent agency of ICE.

19.     Defendant ICE is a component agency of DHS and is responsible for enforcing federal immigration law, including the detention and removal of immigrants.

## JURISDICTION AND VENUE

20.     This action arises under the Section 504 of the Rehabilitation Act, the APA, the INA, and the Constitution of the United States.

21.     This Court has jurisdiction under 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All Writs Act); and 5 U.S.C. § 701 (the Administrative Procedure Act). This Court also has jurisdiction to hear and adjudicate the claims brought pursuant to Rehabilitation Act, 29 U.S.C. § 794, as well its inherent authority to grant equitable relief. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971).

22.     This Court has additional remedial authority under 28 U.S.C. §§ 2201-02 (the Declaratory Judgment Act), to grant injunctive and declaratory relief, and the Court's equitable powers.

23.     Venue is proper in the U.S. District Court for the Eastern District of Louisiana under 28 U.S.C. § 1391, as venue is proper in any district in which a Defendant resides and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. The offices of Defendants Mellissa B. Harper and Scott Ladwig are, upon information and belief, located at 1250 Poydras St, Ste. 325, New Orleans, LA 70113.

## STATEMENT OF FACTS

24.     Ermine is an asylum seeker who came to the United States with her family to seek protection after fleeing persecution and torture in Russia.

25.     Ermine followed the CBP One process established by the government to request asylum at the U.S.-Mexico border. Upon information and belief, on May 4, 2024, as directed by the CBP One mobile application,[2] Ermine and her family presented themselves to government officials. While Ermine's daughter, son-in-law and grandchild were all released to the family's sponsor in California, the government separated and incarcerated Ermine, transporting her to Louisiana where she remains detained today.

26.     On May 21, 2024, Ermine passed her CFI—meaning she showed a significant possibility of establishing eligibility for asylum—and was placed into immigration removal proceedings where she should be able to pursue an application for asylum.

27.     In mid-July 2024, a woman detained at Basile contacted Robert F. Kennedy Human Rights ("RFK Human Rights") and asked the organization to speak with Ermine, who was in excruciating pain and in need of medical advocacy.

28.     Thereafter, on July 19, 2024, RFK Human Rights spoke with Ermine for the first time. On the same day, RFK Human Rights sent an email to Defendant, Scott Ladwig, that set forth, *inter alia,* that: Ermine had a medical disability that has impacted her ability to walk; that she had been denied a wheelchair to go to her immigration court hearing; that she had been denied appropriate care and treatment; and that she was in excruciating pain. *See* Ex. 2, Emails to Defendants from July 19, 2024-October 17, 2024.

---

[2] https://www.cbp.gov/about/mobile-apps-directory/cbpone.

29.     From July 19, 2024, to October 17, 2024, counsel has requested Plaintiff's release. Counsel for Ermine has requested her release/parole as a reasonable accommodation and cited to Section 504. As is discussed *infra,* counsel for Ermine has, in addition to email communications requesting that Ermine be released/paroled, submitted four requests for parole to Defendants.

30.     Counsel submitted an initial parole request on July 25, 2024, that provided a detailed summary to support release and evidence in support thereof including, *inter alia,* a letter from Ermine's sponsor—the same sponsor that her family members were released to—the sponsor's Income Tax Returns, proof of identity, and proof of address. *See* Ex. 3, July 25, 2024, Request for Parole.[3]  The July 25, 2024, Request for Parole was denied on July 29, 2024. The denial did not contain any explanation beyond "You have failed to satisfy to ICE's satisfaction you are not a flight risk." *See* Ex. 4, July 29, 2024, Denial of Request for Parole. Counsel for Ermine requested further explanation, and the requests were ignored by Defendants.

31.     On August 7, 2024, counsel submitted a second request for parole and included additional information, namely a letter of support from another family member to demonstrate the strong family and community support Ermine has in the United States.  *See* Ex. 5, August 7, 2024, Request for Parole.  On August 22, 2024, Defendants denied the August 7, 2024, Request for Parole that repeated verbatim the cursory checked statements contained in the ICE form notice dated July 29, 2024. *See* Ex. 6, ICE Denial of Parole August 22, 2024.  Defendants failed to consider the additional evidence that was submitted in support of the Request for Parole submitted

---

[3] The Requests for Parole are all being submitted without the exhibits because some exhibits included sensitive personal information including, but not limited to, Income Tax Returns of the sponsors. Plaintiff's counsel will seek leave to file the exhibits to the Requests for Parole under seal.

on August 7, 2024.  Counsel requested further explanation, and the requests were ignored by Defendants.

32.     On September 9, 2024, counsel submitted a third request for parole and included additional and new information, namely a letter from her sponsors' church and a letter from a friend, that attested to their character and support that the family has in the community and thereby support for Ermine.  *See* Ex. 7, September 9, 2024, Request for Parole.  On September 10, 2024, Defendants issued a notice date September 10, 2024, that repeated verbatim the cursory checked statements contained in the ICE Denial of Parole July 29, 2024, and August 22, 2024.  *See* Ex. 8, ICE Denial of Parole September 10, 2024. Defendants failed to consider the additional evidence that was submitted in support of the Request for Parole submitted on September 9, 2024.  Counsel requested further explanation, and the requests were ignored by Defendants.

33.     On October 3, 2024, counsel submitted a fourth request for parole that was supported by the Shin Letter together with all the information that was included in the third request for parole.  *See* Ex. 9, October 3, 2024, Request for Parole.

34.     On October 17, 2024, fourteen (14) days after the October 3, 2024, Request for Parole was submitted, Defendants issued a notice that repeated verbatim the cursory checked statements contained in the ICE Denial of Parole July 29, 2024, August 22, 2024, and September 10, 2024.  *See* Ex. 10, ICE Denial of Parole October 17, 2024.

35.     In each of the communications with Defendants, counsel has relayed that Ermine is not able to function daily, that she is in excruciating, debilitating pain, and demonstrates acute mental distress during the entirety of each legal call.  *Id.* at ¶.

36.     On August 21, 2024, counsel wrote a Friend of Court ("FOC") letter to the Executive Office of Immigration Review, Office of the Immigration Judge (EOIR/IJ).  Ex. 11,

FOC Letter to EOIR/IJ. The letter set forth that, *inter alia*, RFK Human Rights was assisting Ermine on a *pro bono* basis in connection with her request for parole and that through this representation it had become clear that Plaintiff is not able to recall dates and times, is emotionally distraught, and is in daily pain that has severely impaired her mobility, resulting in her inability to walk.

37.     The Immigration Judge ("IJ") permitted RFK Human Rights to appear as a FOC on August 21, 2024. The IJ noted that Ermine was in physical and mental distress because it was visible to all present who could observe Plaintiff that she could hardly walk, was in physical pain and cried for much of the court hearing. In other words, she recognized Plaintiff was struggling physically and mentally.

38.     The IJ asked RFK Human Rights as FOC if a request for her release had been submitted. When advised that Defendants had refused release/parole, the IJ expressed dismay and noted that, in her view, she did not have the authority to release Ermine because she was bound by the law that precludes her holding a bond hearing for someone who arrived at the border. *See Matter of M-S-,* 27 I&N Dec. 509 (A.G. 2019).

39.     On September 17, 2024, EOIR again permitted RFK Human Rights to appear as FOC and it was again clear to both counsel and the IJ that Ermine could barely walk and was in mental distress.

40.     On October 11, 2024, counsel for Ermine sent two emails to Defendants asking that Ermine be taken to a hospital. *See* Ex. 2, Emails to Defendants from July 19, 2024-October 17, 2024. Counsel for Ermine sent these emails following a legal call with Ermine on October 11, 2024, in which Plaintiff cried during the entirety of the call due to the excruciating pain that she was experiencing. Defendants failed to respond on October 11, 2024.

41.     On October 11, 2024, RFK Human Rights sent a FOC submission that included an application for asylum (Form I-589) and a motion for accommodations and safeguards to the EOIR/IJ on behalf of Ermine. *See* Ex. 12, FOC Submission October 11, 2024.   The FOC submission set forth that because of Ermine's physical and mental health disabilities that have not been treated while in civil immigration detention, she has not been able to fully participate in her immigration removal proceedings. Ermine's physical and mental health disabilities are so debilitating that it took counsel multiple legal phone calls from September 17, 2024 until October 10, 2024 just to prepare an I-589 application.[4] As a result, the I-589 application was just completed and RFK Human Rights – as is set forth more fully in the motion for safeguards – respectfully requests that the Court taken into consideration Ermine's disabilities in reviewing the I-589 application. Ermine cannot at this time remember specific dates and details of everything that happened in Russia that forced her to flee for her safety to the United States.  *See id.*

42.     On October 13, 2024, counsel sent an email to Defendants again asking that she be taken to the hospital.  *See* Ex. 2, Emails to Defendants from July 19, 2024-October 17, 2024. Counsel for Ermine also requested that Defendants advise what medication Ermine was made to take and what forms she was made to sign.  Upon information and belief, the medication and the forms were related to an outbreak of tuberculosis at Basile. The medication and forms were not explained to Ermine in a language that she can understand – Ermine speaks Russian and Armenian, but does not speak, understand, or write in English. Defendants have been on notice of the fact that Ermine only speaks Russian and Armenian.  Defendants have failed to respond.

---

[4] Counsel for Ermine must request legal phone call through ICE/Basile.  The calls are for approximately one hour but due to Ermine's condition the total amount of time that could be spent on the I-589 application was approximately twenty (20) minutes or less.

43.     On October 14, 2024, counsel learned that Ermine was taken to an outside medical provider because she nearly fell when her left leg gave out as she tried to go to the restroom. The only reason that Ermine did not fall was because other women in Plaintiff's dorm rushed to her assistance. After crying in excruciating pain, Ermine was finally transported to an outside medical provider but was not provided with any imaging tests, and understood from the outside medical provider that there was no assistance that could be provided beyond pain medication.

44.     On October 14, 2024, October 15, 2024, and October 16, 2024, counsel emailed Defendants requesting Ermine's release and all the records produced by the outside medical provider. Those emails remain unanswered by Defendants. *See* Ex. 2, Emails to Defendants from July 19, 2024-October 17, 2024.

45.     On October 15, 2024, counsel attempted to appear as FOC before EOIR, but counsel was not admitted to the EOIR Hearing.[5] Ermine's next hearing before EOIR is, upon information and belief, on November 5, 2024. Ermine's continued detention and unaccommodated disability has deteriorated to the point that she cannot meaningfully participate in her removal proceedings.

## LEGAL FRAMEWORK

### A.  Legal Framework Governing Parole of Asylum Seekers.

46.     Under the Immigration and Nationality Act ("INA"), a person like Ermine who is subjected to expedited removal and requests asylum at a port of entry to the United States must first demonstrate a credible fear of persecution in his or her home country—meaning there is a

---

[5] RFK Human Rights was advised by EOIR following the October 15, 2024, hearing before EOIR that the IJ overseeing Ermine's case was out on that date and that another IJ oversaw hearings on October 15, 2024.

"significant possibility" that the individual is eligible for asylum—during an interview with an immigration officer. 8 U.S.C. § 1225(b)(1)(B)(v). If an individual establishes a credible fear of persecution, he or she is then entitled to a hearing before an IJ to adjudicate the asylum claim. *See id.* § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f).

47.     These proceedings before the IJ and, if there is an appeal, before the Board of Immigration Appeals or a federal court of appeals, may take months or even years. During that period, the government must determine whether the individual should be detained or released pending resolution of the asylum claim. Pursuant to the INA and implementing regulations, asylum seekers who do not pose a flight risk or a danger to the community may be paroled by the government during the pendency of their immigration cases on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c).

48.     The government issued its Parole Directive in 2009.[6] The Parole Directive defines the circumstances under which there is a "significant public benefit" to granting parole pursuant to the INA and implementing regulations. The Parole Directive provides that, absent exceptional overriding factors, an asylum seeker who has established a credible fear of persecution should be granted parole in the "public interest" and released from detention while pursuing his or her asylum claims if the individual (a) establishes his or her identity to the satisfaction of the government; and (b) presents neither a flight risk nor danger to the community. Parole Directive ¶ 6.2.

---

[6] ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009), https://www.ice.gov/doclib/dro/pdf/11002.1-hd-parole_of_arriving_aliens_found_credible_fear.pdf.

49.     The government's policy, reflected in the Parole Directive, against the detention of asylum seekers who have credible claims to asylum, ensures that the government adheres to constitutional prohibitions against arbitrary detention. Asylum seekers, including those detained at ports of entry into the United States, are "persons" who may not be deprived of liberty without due process of law.  *See Reno v. Flores,* 507 U.S.292, 306 (1993)*.* Accordingly, the Due Process Clause, as well as the INA and its implementing regulations, preclude the government from subjecting a bona fide asylum seeker to long-term civil immigration detention absent an individualized determination that the individual poses a flight risk or is a danger to the community.

**B.     Defendants' Violation of Section 504 of the Rehabilitation Act Requires Ermine's Release.**

50.     Section 504 prohibits discrimination on the basis of a disability in programs, services, or activities conducted by U.S. federal agencies, including DHS (ICE). 29 U.S.C. § 794; 6 C.F.R. § 15.30, *et seq.* (applying to DHS).  Section 504 applies to the DHS (ICE) and Justice. *See* 6 C.F.R. § 15.30, *et seq.*; 28 C.F.R. § 39.130, *et seq*. (applying to EOIR).   Regulations promulgated by the DHS state that they may not, directly or indirectly "afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit or service *that is not equal to that afforded others*"; or "provide a qualified [individual] with an aid, benefit or *service that is not as effective in affording equal opportunity to obtain the same result*, to gain the same benefit, or to reach the same level of achievement as that provided to others." 6 C.F.R. § 15.30(b)(1)(iii); 28 C.F.R. § 39.130(b)(1)(iii) (emphasis added).

51.     The Rehabilitation Act defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). This definition includes chronic illness, as well as physical, intellectual, developmental, psychiatric, visual, and

auditory disabilities. Margo Schlanger, Elizabeth Jordan, Roxana Moussavian, *Ending the Discriminatory Pretrial Incarceration of People with Disabilities: Liability Under the Americans with Disabilities Act and the Rehabilitation Act*, 17 Harv. Law & Pol. Rev. 1, 237–48 (2022).

52.     Section 504 aims "to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance." *Alexander v. Choate*, 469 U.S. 287, 304; *see also Frame* v. *City of Arlington*, 657 F.3d 215, 232 (5th Cir. 2011).  The failure to implement reasonable accommodations to Ermine would deprive her of this evenhanded treatment and amount to disability discrimination.  *See Campbell* v. *Lamar Inst. of Tech.*, 842 F.3d 375, 380 (5th Cir. 2016) ("Discrimination includes a failure to make reasonable accommodations.").

53.     Under Section 504, "[n]o qualified individual with a disability in the United States, shall, by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity … conducted by any Executive agency." 29 U.S.C. § 794. ICE adopted binding regulations to ensure that Section 504 is implemented within the agency. 6 C.F.R. § 15.30, *et seq.* Section 504 forbids not only facial discrimination against individuals with disabilities, but also requires that executive agencies and departments, such as DHS, alter policies and practices to prevent discrimination on the basis of disability.

54.     The terms "benefit, programs, and services" are construed broadly. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("Modern prisons provide [people who are incarcerated] with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit'" the people imprisoned); *see*

*also Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) (recognizing the "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes").

55.    In *Choate* the Supreme Court created the "meaningful access" standard: that "otherwise qualified" people with disabilities must be granted reasonable modifications to ensure they are "provided with meaningful access" to the program at issue. *Choate*, 469 U.S. 300–02 n. 21 (1985). Namely, under Section 504 covered entities must afford persons with disabilities "'equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement.'" *Id.* at 305 (citing 45 C.F.R. § 84.4(b)(2)).

56.    Reasonable accommodations necessary to prevent disability discrimination are required unless such modifications would create a "fundamental alteration" of the relevant program, service, or activity, or would impose an undue hardship. *See Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 288 n.17 (1987) (modification not required if it would require "a fundamental alteration in the nature of [the] program") (citation omitted); *Choate*, 469 U.S. at 300; *see also* 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.").

57.    Defendants' refusal to provide Ermine the reasonable accommodation of release denies her "meaningful access" to the benefits afforded under the INA.   She requires release as a reasonable accommodation pursuant to Section 504. ICE is engaging in disability discrimination by refusing to grant her requested release.

58.    Ermine is a "qualified individual with a disability" for the purposes of Section 504. 29 U.S.C. § 705(20)(A). Section 504 defines "disability" as "a physical or mental impairment that

substantially limits one or more major life activities of [the] individual." 42 U.S.C. § 12102(1),

*see* 28 C.F.R. § 39.130 (regulations implementing Section 504 for EOIR). This definition includes

intellectual, developmental, psychiatric, visual, and auditory disabilities. 42 U.S.C. § 12102(1).

The Shin Letter sets forth the following:

> Currently, she [Ermine] has difficulty walking, sitting and standing, going up and
> down stairs. She also suffers from worsening bilateral leg muscle weakness and
> chronic back pain that are results of her untreated knee disease and confirmed on
> recent medical evaluations while in detention and also at Ochsner University Sport
> Medicine clinic. Her knee and back pain are so severe that she is unable to sleep   more
> than an hour at a time and she has worsening symptoms of  depression and anxiety. All of
> these symptoms remain uncontrolled.

> Furthermore, her psychiatric evaluation suggests worsening severe anxiety, panic attacks,
> and somatization including numbness, chest pain, and shortness of breath/hyperventilation.
> Functionally she is unable to perform routine activities of daily living without assistance
> including walking and dressing herself.

> Overall, [Ermine]'s medical conditions are severe based both on her MRI imaging
> findings as well as the severe functional impairments and resulting negative impact
> on her mental health. These physical and mental health symptoms are exacerbated
> during her time in detention as described in her medical evaluations and also in
> communications to and from her legal team.

 Ex. 1, Shin Letter.

59.     Ermine is being excluded from meaningful participation in her immigration

proceedings on account of her disabilities. Ermine's physical and mental health has not been

appropriately treated and has deteriorated to the point that she cannot meaningfully participate in

her removal proceedings.

60.     Immigration proceedings include many component parts. Proceedings start in

immigration court, where a noncitizen bears the burden of establishing that she satisfies eligibility

requirements for any form of relief to remain in the United States. 8 U.S.C. § 1229a(c)(4)(A).

During removal hearings, an applicant "shall be examined under oath on his or her application and

may present evidence and witnesses in his or her own behalf." 8 C.F.R. § 1240.11(c)(3)(iii). She also has the right to examine any evidence submitted by DHS. 8 U.S.C. § 1229a(b)(4)(B). If ordered removed, she has the right to judicial review of a removal order by the circuit court of appeals, which requires her to communicate and make strategic decisions with her counsel. 8 U.S.C. § 1252(a)(2)(D).

61.     Meaningfully participating in these immigration proceedings requires, at a minimum, "a *full* and fair opportunity" (1) "to be represented by counsel," (2) "to prepare an application for… relief," and (3) "to present testimony and other evidence in support of that application." *Guan v. Sessions*, 925 F.3d 1022, 1032 (9th Cir. 2019) (emphasis added) (citation omitted); *see also Rios-Berrios v. INS*, 776 F.2d 859, 862 (9th Cir. 1985) (confirming that Congress codified these rights in the INA). The right to be represented by counsel "must be respected in substance as well as in name" and includes the "related right to consult with counsel." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554, 564-65 (9th Cir. 1990) (internal quotes and citations omitted).

62.     A single accommodation—release from detention—would allow Ermine to access her immigration proceedings.  Detention is severely exacerbating Ermine's disabilities. *See* Ex. 1, Shin Letter.  The Shin letter sets forth that his "expert medical opinion that her symptoms could be better addressed and improve in a community-based setting. Furthermore, her medical conditions are being made worse within the context of prolonged detention which could lead to avoidable and potentially permanent debilitating symptoms."  *Id*.

63.     The modification Ermine seeks is reasonable and would not impose a fundamental alteration to her immigration proceedings. *See Choate*, 469 U.S. at 299–300, 302 n.21 (1985); *see also* 28 C.F.R. §§ 35.130(b)(1)(7)(i), 35.150(a)(3); 6 C.F.R. §§ 15.30, § 15.50; *cf. PGA Tour, Inc.*,

532 U.S. at 661–63 (a fundamental alteration is one that changes an "essential aspect" of the program).

64.     The government regularly releases people subject to the same detention statute under what they regard as their discretionary authority.  In fact, the statute itself gives Defendants discretion to release anyone on humanitarian parole.  8 U.S.C. § 1182(d)(5)(A).  Defendants have wide discretion to release persons from its custody for humanitarian reasons.  As is discussed *supra,* DHS established regulations for implementing this statute, and the Parole Directive specifically defines circumstances, like those of Ermine, where an asylum seeker who has established a credible fear of persecution should be granted parole in the "public interest" and released from detention.  The Parole Directive also specifically sets forth that people who have a medical condition can be released where continued detention would not be appropriate.  Parole Directive ¶ 4.3.

65.     Moreover, the ICE Directive 11071.1: Assessment and Accommodations for [Noncitizens] With Disabilities § 5.4 provides for release as an option for persons with disabilities who are detained.  Therefore, while Defendants may argue that 8 U.S.C. § 1225(b) subjects Ermine to mandatory detention, this argument is without merit. As is clear, the government can still release her because it would not be a fundamental alteration to the benefit sought.

66.     Release does not pose an undue burden. An accommodation may be deemed unreasonable if it poses an undue financial or administrative burden to the agency. 28 C.F.R. § 35.164. The government violates Section 504 if a reasonable accommodation is available but is not afforded because this amounts to disability discrimination. *Choate*, 469 U.S. at 300.

67.     Rather, release of Ermine from custody is less administratively onerous and costly for the government than continued incarceration. Almost 3.6 million cases are pending and

awaiting adjudication by U.S. immigration courts,[7] and, as of Sept. 8, 2024, ICE held 37,395

people in custody on detained dockets.[8] Only a tiny fraction of cases pending before EOIR are

detained.[9] ICE is currently overseeing 176,886 released cases using Alternatives to Detention

("ATD").[10] It could easily add one more case to that list.

68.     Determining "the reasonableness of a proposed modification is generally fact-specific."

*Bailey* v. *Bd. of Commr's of La. Stadium & Exposition Dist.*, 484 F. Supp. 3d 346, 427 (E.D. La. 2020),

*aff'd sub nom. Bailey* v. *France*, 852 F. App'x 852 (5th Cir. 2021); *U.S. Airways, Inc.* v. *Barnett*, 535

U.S. 391, 401 (2002) (explaining that "many of the lower courts . . .  have reconciled the phrases

'reasonable accommodation' and 'undue hardship' in a practical way," inquiring whether an

accommodation "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases.").

69.     The request to release Ermine as a reasonable accommodation is precisely the type

of accommodation contemplated under Section 504. *See* 6 C.F.R. § 15.30(b)(1)(iii); 28 C.F.R. §

39.130(b)(1)(iii) (Section 504 covered entities must afford persons with disabilities "equal

opportunity to obtain the same result, to gain the same benefit, or to reach the same level of

achievement as that provided to others.").

70.     Release is the sole accommodation available to allow Ermine to access the benefit

to which she is entitled. Transferring Ermine's case from a detained to a non-detained docket

---

[7]      TRAC       Immigration,       "Immigration       Court       Quick       Facts,"
https://trac.syr.edu/immigration/quickfacts/eoir.html (last accessed May 12, 2024).
[8] TRAC Immigration, "Immigration Detention Quick Facts,"
https://trac.syr.edu/immigration/quickfacts/ (last accessed Sept. 19, 2024).
[9] Data indicates that in 2024, EOIR has completed over 800,000 cases. TRAC Immigration,
"Immigration Court Quick Facts," https://trac.syr.edu/immigration/quickfacts/ (last accessed
Sept. 19, 2024)
[10] TRAC Immigration, "Alternatives to Detention,"
https://trac.syr.edu/immigration/detentionstats/atd_pop_table.html (last accessed May 12, 2024).

would require minimal effort. Providing Ermine the accommodation requested does not pose an undue administrative burden.

71.     Ermine's continued detention is denying her the benefit of meaningful participation in her immigration proceedings on the basis of her disability. By failing to afford release to Ermine as a reasonable accommodation, ICE is in violation of its obligations under Section 504. The result is disability discrimination.

**C.     Defendants Refusal to Parole Ermine, a Disabled Asylum Seeker who Has Passed Her Credible Fear Interview, is Unlawful.**

72.     As is discussed *supra,* counsel has now submitted four requests for release. *See* Exs. 3, 5, 7 and 9.  The four requests for parole submitted by legal counsel for Ermine have all be denied with nothing more than a cursory conclusion that Ermine—who can barely walk, has a U.S. citizen family sponsor in addition to multiple family members in the U.S., and presents a strong candidate for parole—is a flight risk. *See supra at* ¶¶30-35.

73.     Under the Parole Directive, the INA and implementing regulations, immigration detention of an asylum seeker must be based on an individualized determination that the asylum seeker constitutes a flight risk or a danger to the community. *See* 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c).

74.     The denial of parole to Ermine has not been, as is set forth *supra,* based upon an individualized review and determination. Rather, the four denials have all been cursory, have failed to consider the evidence presented, and Defendants have ignored repeated requests that they provide an individualized review of Ermine's continued detention.

75.     The APA provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." 5 U.S.C. § 706(2)(A). When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi*, 347 U.S. 260, 266, 268 (1954). The *Accardi* doctrine "stands for the unremarkable proposition that an agency must abide by its own regulations." *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007). The *Accardi* doctrine also obligates agencies to comply with procedures it outlines in its internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that an agency is obligated to comply with procedural rules outlined in its internal manual); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (same).

76.     Moreover, Defendants' actions violate the *Accardi* doctrine, which "stands for the unremarkable proposition that an agency must abide by its own regulations." *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007). The *Accardi* doctrine also obligates agencies to comply with procedures it outlines in its internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that an agency is obligated to comply with procedural rules outlined in its internal manual); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (same).

77.     A court reviewing agency action "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"; it must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang* v. *Holder*, 565 U.S. 42, 53 (2011) (quotations omitted). Defendants have also violated the INA and the implementing regulations related to parole in failing to provide an individualized determination of Ermine's continued detention. Defendants must make parole decisions pursuant to the INA and the implementing regulations. *See* 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5(b).

78.     Defendants are obligated to consider Ermine's individual circumstances, including that: she passed her CFI establishing a "significant possibility" of eligibility for asylum; she has a confirmed disability that is precluding her access to EOIR immigration removal proceedings; a medical expert has confirmed that her medical condition is dire and requires release from detention; and there is voluminous documentation from Plaintiff's U.S. citizen family members, their church, and the community attesting to the support she would have upon release.

79.     Yet Defendants have only issued cursory denials without taking any of these factors into consideration. Defendants have failed to provide "*some* individualized facially legitimate and bona fide reason for denying parole, and *some* factual basis for that decision in each individual case." *Marczak v. Greene*, 971 F.2d 510, 518 (10th Cir. 1992); *see also Sierra v. INS*, 258 F.3d 1213, 1219 (10th Cir. 2001) (same); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1082-84 (9th Cir. 2006) (requiring parole decision to be based on "facially legitimate and bona fide" reasons reflecting the individual's circumstances).

80.     Finally, for similar reasons, Defendants' blanket denial of parole and refusal to provide an individualized consideration of the necessity for Ermine's continued detention violates the Due Process Clause, which only permits civil immigration detention that is reasonably related to the government's interests in preventing flight risk or danger. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT- FAILURE TO AFFORD RELEASE AS A REASONABLE ACCOMMODATION

81.     Ermine repeats and realleges the foregoing allegations as if fully set forth herein.

82.     Defendants' continued detention of Ermine, an individual with disabilities, denies her equal access to immigration proceedings and requires a reasonable accommodation under Section 504 and its implementing regulations. 29 U.S.C. § 794; 6 C.F.R. § 15.30, *et seq*.; 28 C.F.R. § 39.130, *et seq*.

83.     Release is the only reasonable accommodation that will allow Ermine to be able to meaningfully participate in her immigration proceedings.

84.     Defendants' continued detention of Ermine without allowing her the reasonable accommodation of release to obtain the recommended course of psychiatric treatment violates Section 504 and its implementing regulations.

## COUNT II

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT AND THE *Accardi* DOCTRINE - FAILURE TO FOLLOW THE ICE PAROLE DIRECTIVE

85.     Ermine repeats and realleges the foregoing allegations as if fully set forth herein.

86.     The APA provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

87.     When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations."  *Accardi*, 347 U.S. at 266, 268. "[T]he premise underlying the *Accardi* doctrine is that agencies can be held accountable to their own codifications of procedures and policies — and particularly those that affect individual rights." *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018). As multiple courts have established,

the Parole Directive "falls squarely within the ambit of those agency actions to which the [*Accardi*]

doctrine may attach." *Id*. at 338.

88.     Thus, Defendants are required to abide by the Parole Directive and fail to do so

when they have failed to provide an individualized review of the need for Ermine's continued

detention.

89.     Defendants' actions are arbitrary and capricious and contrary to law, in violation of

the APA. *See* 5 U.S.C. § 706(2)(A).

90.     Ermine has no adequate remedy at law.

## COUNT III

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT–VIOLATION OF THE INA AND IMPLEMENTING REGULATIONS–FAILURE TO PROVIDE AN INDIVIDUALIZED DETERMINATION OF FLIGHT RISK AND DANGER

91.     Ermine repeats and realleges the foregoing allegations as if fully set forth herein.

92.     Under the INA and implementing regulations, immigration detention of an asylum

seeker must be based on an individualized determination that the asylum seeker constitutes a flight

risk or a danger to the community.

93.     Defendants have *four* times denied Ermine's request for parole with a boilerplate

response, without considering her individualized circumstances, including the fact she had passed

her CFI, has two U.S. citizen sponsors, multiple family members in the United States, and all the

incentive to participate in her removal proceedings, especially considering her disability. These

decisions constitute final agency action.

94.     Defendants' repeated denials of parole are from individualized or bona fide. Rather,

their four written denials are cursory and not individualized, failing to recognize submitted new

information relevant to flight risk, like the Shin Letter. *See* Ex. 1, Shin Letter.

95.     Defendants have thus failed to provide any facially legitimate or bona fide reason with a factual basis reflecting Ermine's circumstances. *See Marczak*, 971 F.2d at 518.

96.     Defendants' refusal to conduct an individualized determination of Ermine's multiple requests to be released from detention thus violates the INA and its implementing regulations.

97.     Ermine has no adequate remedy at law.

## COUNT IV

### DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT–FAILURE TO PROVIDE AN INDIVIDUALIZED DETERMINATION OF FLIGHT RISK AND DANGER

98.     Ermine repeats and realleges the foregoing allegations as if fully set forth herein.

99.     The Due Process Clause provides that "no person . . . shall be deprived of. . . liberty . . . without due process of law." U.S. Const., amend. V.

100.    Asylum seekers, like Ermine, who present themselves at a port of entry to the United States are "persons" who may not be deprived of liberty without due process of law under the Due Process Clause.

101.    The Due Process Clause permits civil immigration detention of an asylum seeker only where such detention is reasonably related to the government's interests in preventing flight or protecting the community from danger. Thus, due process requires an individualized assessment of flight risk or danger to the community to determine whether detention is justified. In addition, particularly where detention is prolonged, due process requires a custody hearing before a neutral decision-maker to determine if detention is necessary.

102.    As is set forth *supra,* Defendants have failed to provide Ermine with an individualized determination.

- 26 -

103.    Therefore, Defendants have violated Ermine's rights under the Due Process Clause of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Ermine respectfully requests that this Court:

A.  Assume jurisdiction over this matter;

B.  Declare that Ermine's continued detention violates Section 504 of the Rehabilitation Act, as it deprives her of a reasonable accommodation for her disabilities and is contrary to law and regulations and order her immediate release;

C.  Declare that Defendants' parole decisions violate the APA because they failed to provide an individualized determination as required under the Parole Directive;

D.  Declare that Defendants' parole decisions violate the APA because they failed to provide an individualized determination as required by the INA and its implementing regulations;

E.  Declare that Defendants' parole decisions violate the Due Process clause because they failed to provide an individualized determination of whether Ermine's continued detention is reasonably related to a legitimate government interest;

F.  Enter an order enjoining Defendants from detaining Ermine in civil immigration detention as it prevents her from participating in her removal proceedings;

G.  Enter an order enjoining Defendants from detaining Ermine in civil immigration detention absent a parole review that results in an individualized determination that detention is necessary to prevent flight or danger to the community and that conforms to other requirements of the Parole Directive, the INA, its implementing regulations, and the Due Process Clause;

H.  Award costs and reasonable attorney's fees in this action as provided for by the Equal

Access to Justice Act, 28 U.S.C. § 2412, or other statute; and

I.  Grant any other and further relief that this Court deems just and proper.

Date:   October 21, 2024                    Respectfully submitted,

*/s/ Charles Andrew Perry*
Charles Andrew Perry
Louisiana Bar No. 40906
**ACLU FOUNDATION OF LOUISIANA**
1340 Poydras St., Suite 2160
New Orleans, LA 70112
(504) 522-0628
aperry@laaclu.org

*/s/ Nora Ahmed*
Nora Ahmed*
**ACLU FOUNDATION OF LOUISIANA**
1340 Poydras St., Suite 2160
New Orleans, LA 70112
(504) 522-0628
nahmed@laaclu.org

*/s/Sarah T. Gillman*
Sarah T. Gillman*
Gillman@rfkhumanrights.org
**ROBERT F. KENNEDY HUMAN
RIGHTS**
88 Pine Street, 8th Floor, Suite 801
New York, New York 10005
Tel.: (646) 289-5593

*/s/ Sarah E. Decker*
Sarah E. Decker*
**ROBERT F. KENNEDY HUMAN
RIGHTS**
1300 19th Street NW, Suite 750
Washington, DC 20036
Tel.: (646) 289-5593
decker@rfkhumanrights.org
*Pro Hac Vice application forthcoming
Counsel for Plaintiff*

- 28 -